**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

Great-West Life & Annuity Insurance Company,
and Empower Retirement, LLC,

        Plaintiffs,

    vs.

Empower Geographics, Inc., and Alex Machinis,

        Defendants.

Case No. 1:21-cv-04004

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs Great-West Life & Annuity Insurance Company ("Great-West") and its subsidiary Empower Retirement, LLC ("Empower") (collectively, "Plaintiffs"), state for their Complaint against Defendants Empower Geographics, Inc. ("Empower Geo") and Alex Machinis ("Machinis") (collectively, "Defendants"), the following:

## NATURE OF THE CASE

1.    This is an action for violation of the Anti-Cybersquatting Consumer Protection Act, trademark infringement, violation of Illinois' Uniform Deceptive Trade Practices Act, Illinois common law trademark infringement and tortious interference with prospective economic advantage. Plaintiffs seek permanent injunctive relief and damages.

2.    As of 2016, Defendants ceased using an Internet domain name <empower.com> (the "Empower Domain") for any arguable bona fide sales of goods or services, and have solely been using the Empower Domain to market the sale of the Empower Domain and demand a multi-million dollar purchase price, particularly directed towards Plaintiffs. Defendants' efforts include leveraging actual confusion of Plaintiffs' customers and threats of selling the Empower Domain to Plaintiffs' competitors and professional cybersquatters so as to justify an asking price which Defendants admit is entirely

based on the goodwill, reputation, and fame that Plaintiffs have created in the EMPOWER Marks (as defined herein). Despite Plaintiffs' good faith efforts to negotiate a reasonable resolution without judicial intervention, Defendants' acts have only escalated and constitute such an unacceptable use of the Empower Domain in blatant disregard for federal and state laws that Plaintiffs were left with no choice but to bring this suit.

3.      As described below, Defendants' continued and unauthorized use of the Empower Domain, which is identical to, subsumed by, and confusingly similar to Plaintiffs' well-known and federally registered EMPOWER Marks, is in violation of the anti-cybersquatting, trademark, deceptive trade practices, unfair competition, and tortious interference laws of the United States and the State of Illinois. Unless enjoined by this Court, Defendants will continue to cause irreparable harm.

## THE PARTIES

4.      Plaintiff Great-West Life & Annuity Insurance Company is a Colorado corporation duly organized and existing under the laws of the State of Colorado, having an office and place of business at 8515 E. Orchard Road, Greenwood Village, CO 80111.

5.      Plaintiff Empower Retirement, LLC, a subsidiary of Great-West Life & Annuity Insurance Company and licensee to the EMPOWER Marks (as defined herein), is a Colorado limited liability company, having an office and place of business at 8515 E. Orchard Road, Greenwood Village, CO 80111.

6.      On information and belief, Defendant Empower Geographics, Inc. is an Illinois corporation duly organized and existing under the laws of the State of Illinois, having a principal place of business at 1827 N. Dover Ct., Arlington Heights, IL 60004. Previously, Defendant Empower Geo's principal place of business was located at 1000 Executive Way, Des Plaines, IL 60018. The president and secretary of Defendant Empower Geo is identified as Defendant Alex Machinis. Defendant

Empower Geo has been periodically listed as the registrant and administrator of the <empower.com> domain.

7.     On information and belief, Defendant Alex Machinis is an individual who resides in Cook County, Illinois.  Defendant Machinis is recorded as the president and secretary of Defendant Empower Geo.  Defendant Machinis has been periodically listed as the registrant and administrator of the Empower Domain.  Defendant Machinis has acted through various agents in the marketing and sale of the Empower Domain, including through Grit Brokerage, a domain broker firm, and by and through a specific broker, Brian Harbin.

## JURISDICTION AND VENUE

8.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under an Act of Congress relating to trademark infringement and anti-cybersquatting, specifically arising under the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, and the Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d) (hereinafter, the "ACPA").

9.     This Court also has jurisdiction under 28 U.S.C. § 1338(b) as to the Lanham Act unfair competition claim, in that the claim is joined with a substantial and related claim under the trademark laws of the United States.

10.     This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) as the jurisdictional amount exceeds $75,000, and Plaintiffs are citizens of a different state than Defendants.

11.     This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) as the claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

12.     This Court has personal jurisdiction over Defendant Alex Machinis because, on information and belief, he resides in Illinois and this District.

13.     This Court has personal jurisdiction over Defendant Empower Geo because, on information and belief, it is registered to do business in Illinois and its principal place of business is in this District.

14.     Venue is proper in this Court under 28 U.S.C. § 1391 because all Defendants reside in this District, and upon information and belief, Defendants registered the Empower Domain at issue from this District, and Defendants have caused confusion among consumers in Illinois and this District.

### FACTS COMMON TO ALL COUNTS

#### Plaintiffs' Trademark Rights

##### *The Origins of the EMPOWER Brand*

15.     In 2014, Great-West combined three financial service businesses to form a new retirement business.  Under the brands "Empower Retirement" and "Empower" (together, the "EMPOWER Brand"), Plaintiffs focused on developing and managing retirement products and services for millions of individuals and tens of thousands of organizations.  Plaintiffs' reputation and goodwill, together with the quality of their products and services, have helped them quickly grow to be the second largest provider of retirement services in the United States.

16.     Plaintiffs also continued their growth by acquiring other retirement services businesses and welcoming them into the EMPOWER Brand.  For example, in August 2020, Plaintiffs acquired Personal Capital, a digital-first registered investment adviser and wealth manager.  Personal Capital was rebranded as "Personal Capital, an Empower Company," under which name it continues to provide award-winning financial tools and investment solutions to its clients.  In January 2021, Great-West closed its acquisition of Massachusetts Mutual Life Insurance Company's (MassMutual) retirement plan business, increasing Empower's participant base to more than 12 million, and by March 2021, it was administering approximately $1 trillion in assets.  In July 2021, Great-West announced its entry into an agreement to acquire Prudential Financial, Inc.'s full-service retirement business, which, upon

the close of that transaction, will increase Empower's participant base to more than 16 million and its retirement services recordkeeping assets to approximately $1.4 trillion administered in approximately 71,000 workplace savings plans.

17.     Plaintiffs' success is reflected in the growth of the EMPOWER Brand, under which Plaintiffs offer an increasing variety of financial products and services for consumers and organizations.  Since at least as early as 2014, and continuing through the present, Plaintiffs have made continuous and substantial use and promotion of the EMPOWER Brand, including the prominent marketing of the "Empower Retirement" and "Empower" names and logos, to advertise their products and services.  Annually, Plaintiffs have spent in excess of $50 million in the United States alone to promote and advertise their business and associated products and services to current and prospective customers under the EMPOWER Brand.  As Plaintiffs' products and services have become more directly consumer-oriented, Plaintiffs have increasingly focused their promotion of the EMPOWER Brand in such things as high-profile sports sponsorships and television advertising.

### *The EMPOWER Marks*

18.     By virtue of this continuous and substantial use of the EMPOWER Brand in commerce in connection with Plaintiffs' products and services, the purchasing public immediately recognizes Plaintiffs as the source of a broad family of EMPOWER trademarks (the "EMPOWER Marks").  As such, the EMPOWER Marks are distinctive, and strong common law rights in such marks have developed through use of such marks on or in connection with the sale of these products and rendering of these services throughout the United States.  In addition to common law trademark rights, Great-West owns several federal trademark applications and registrations for specific EMPOWER Marks, to which Empower is a licensee, including but not limited to the following non-exhaustive list of United States trademark registrations:

a.      U.S. Trademark Registration No. 5256647 for the trademark  in International Class 35 for use in connection with, "Financial record keeping for employer-sponsored defined contribution plans and defined benefit plans solely for institutions, government agencies, and employers; Financial record keeping for services provided solely to institutions, government agencies, and employers for regulatory compliance purposes," and International Class 36 for use in connection with, "Financial administration of employee pension plans and retirement plans provided solely to institutions, government agencies, and employers; enrollment processing services for employer-sponsored defined contribution and defined benefit plans provided solely to institutions, government agencies, and employers; investment of funds for others; investment and retirement fund management; mutual fund investment services; providing an interactive website and online computer database information in the field of employer-sponsored defined contribution and defined benefit plans; all excluding services in the fields of insurance, real estate, banking, and venture capital" (hereinafter, the "'647 Registration"). The '647 Registration issued on August 1, 2017, and is based on an application filed with the United States Patent and Trademark Office (the "USPTO") on October 27, 2014. A true and correct copy of the registration certificate for the '647 Registration is attached hereto as Exhibit 1.

b.      U.S. Trademark Registration No. 5407837 for the trademark  in International Class 35 for use in connection with, "Financial record keeping for employer-sponsored defined contribution plans and defined benefit plans solely for institutions, government agencies, and employers; financial record keeping for services provided solely to institutions, government agencies, and employers for regulatory compliance purposes," and International Class 36 for use in connection with, "Financial record keeping services provided solely to institutions, government agencies, and employers; financial administration of employee pension plans and retirement plans provided solely to

6

institutions, government agencies, and employers; enrollment processing services for employer-sponsored defined contribution and defined benefit plans provided solely to institutions, government agencies, and employers; investment of funds for others; investment and retirement fund management; mutual fund investment services; providing an interactive website and online computer database information in the field of employer-sponsored defined contribution and defined benefit plans; all excluding services in the fields of insurance, real estate, banking, and venture capital" (hereinafter, the "'837 Registration"). The '837 Registration issued on February 20, 2018, and is based on an application filed with the USPTO on October 27, 2014. A true and correct copy of the registration certificate for the '837 Registration is attached hereto as Exhibit 2.

c. U.S. Trademark Registration No. 5743480 for the trademark  in International Class 9 for use in connection with, "Downloadable software in the nature of a mobile application for retirement plan participant access to financial records related to employer-sponsored defined contribution plans and defined benefit plans provided through government agencies and employers; Downloadable software in the nature of a mobile application for retirement plan financial record keeping for participants with regard to plans distributed to institutions, government agencies, and employers; Downloadable software in the nature of a mobile application for financial administration of employee pension plans and retirement plans provided solely to institutions, government agencies, and employers and their employee participants; Downloadable software in the nature of a mobile application for providing database access to information in the field of employer-sponsored defined contribution and defined benefit plans; Downloadable software for financial record keeping and retirement fund management; All excluding services in the fields of insurance, real estate, banking, and venture capital" (hereinafter, the "'480 Registration"). The '480 Registration issued on

May 7, 2019, and is based on an application filed in the USPTO on May 16, 2018. A true and correct copy of the registration certificate for the '480 Registration is attached hereto as Exhibit 3.

        d.      U.S. Trademark Registration No. 6053841 for the trademark EMPOWERUP in International Class 35 for use in connection with, "Financial record keeping for employer-sponsored defined contribution plans and defined benefit plans for institutions, government agencies, and employers; financial record keeping for services provided solely to institutions, government agencies, and employers for regulatory compliance purposes; enrollment processing services for employer-sponsored defined contribution and defined benefit plans provided to institutions, government agencies, and employers; financial record keeping services for health savings accounts provided to institutions, government agencies, and employers," and International Class 36 for use in connection with, "Financial administration of employee pension plans and retirement plans provided to institutions, government agencies, and employers; administration of health savings accounts; investment of funds for others; investment and retirement fund management; mutual fund investment services; providing an interactive website and online computer database information in the field of employer-sponsored defined contribution and defined benefit plans; annuity underwriting and investment management of and distribution of annuities; underwriting and administration of individual and group annuities; all excluding services in the fields of insurance, real estate, banking, and venture capital" (hereinafter, the "'841 Registration"). The '841 Registration issued on May 12, 2020, and is based on an application filed in the USPTO on March 22, 2018. A true and correct copy of the registration certificate for the '841 Registration is attached hereto as Exhibit 4.

        e.      U.S. Trademark Registration No. 6053897 for the trademark

 in International Class 35 for use in connection with, "Financial record keeping for employer-sponsored defined contribution plans and defined benefit plans for institutions, government agencies, and employers; financial record keeping for services provided solely to

institutions, government agencies, and employers for regulatory compliance purposes; enrollment processing services for employer-sponsored defined contribution and defined benefit plans provided to institutions, government agencies, and employers; financial record keeping services for health savings accounts provided to institutions, government agencies, and employers," and International Class 36 for use in connection with, "Financial administration of employee pension plans and retirement plans provided to institutions, government agencies, and employers; administration of health savings accounts; investment of funds for others; investment and retirement fund management; mutual fund investment services; providing an interactive website and online computer database information in the field of employer-sponsored defined contribution and defined benefit plans; annuity underwriting and investment management of and distribution of annuities; underwriting and administration of individual and group annuities; all excluding services in the fields of insurance, real estate, banking, and venture capital" (hereinafter, the "'897 Registration"). The '897 Registration issued on May 12, 2020, and is based on an application filed in the USPTO on May 16, 2018. A true and correct copy of the registration certificate for the '897 Registration is attached hereto as Exhibit 5.

    f.  U.S. Trademark Registration No. 6053898 for the trademark **EMPOWER UP** in International Class 35 for use in connection with, "Financial record keeping for employer-sponsored defined contribution plans and defined benefit plans for institutions, government agencies, and employers; financial record keeping for services provided solely to institutions, government agencies, and employers for regulatory compliance purposes; enrollment processing services for employer-sponsored defined contribution and defined benefit plans provided to institutions, government agencies, and employers; financial record keeping services for health savings accounts provided to institutions, government agencies, and employers," and International Class 36 for use in connection with, "Financial administration of employee pension plans and retirement plans provided to institutions, government agencies, and employers; administration of health savings

accounts; investment of funds for others; investment and retirement fund management; mutual fund investment services; providing an interactive website and online computer database information in the field of employer-sponsored defined contribution and defined benefit plans; annuity underwriting and investment management of and distribution of annuities; underwriting and administration of individual and group annuities; all excluding services in the fields of insurance, real estate, banking, and venture capital" (hereinafter, the "'898 Registration"). The '898 Registration issued on May 12, 2020, and is based on an application filed in the USPTO on May 16, 2018. A true and correct copy of the registrations certificate for the '898 Registration is attached hereto as Exhibit 6.

g.      U.S. Trademark Registration No. 6064550 for the trademark EMPOWER HSA in International Class 35 for use in connection with, "Financial record keeping for employer-sponsored defined contribution plans and defined benefit plans solely for institutions, government agencies, and employers; financial record keeping for services provided solely to institutions, government agencies, and employers for regulatory compliance purposes; enrollment processing services for employer-sponsored defined contribution and defined benefit plans provided solely to institutions, government agencies, and employers; financial record keeping services for health savings accounts provided solely to institutions, government agencies, and employers" and International Class 36 for use in connection with, "Financial administration of employee pension plans and retirement plans provided solely to institutions, government agencies, and employers; administration of health savings accounts; investment of funds for others; investment and retirement fund management; mutual fund investment services; providing an interactive website and online computer database information in the field of employer-sponsored defined contribution and defined benefit plans; all excluding services in the fields of insurance, real estate, banking, and venture capital" (hereinafter, the "'550 Registration"). The '550 Registration issued on May 26, 2020, and is based on an application filed in the USPTO on March 29,

2017.  A true and correct copy of the registration certificate for the '550 Registration is attached hereto as Exhibit 7.

h.     U.S. Trademark Registration No. 6064551 for the trademark EMPOWER DYNAMIC RETIREMENT MANAGER in International Class 35 for use in connection with, "Financial record keeping for employer-sponsored defined contribution plans and defined benefit plans solely for institutions, government agencies, and employers; financial record keeping for services provided solely to institutions, government agencies, and employers for regulatory compliance purposes; enrollment processing services for employer-sponsored defined contribution and defined benefit plans provided solely to institutions, government agencies, and employers; financial record keeping services for retirement and investment accounts provided solely to institutions, government agencies, and employers" and International Class 36 for use in connection with, "Financial administration of employee pension plans and retirement plans provided solely to institutions, government agencies, and employers; administration of health savings accounts; investment of funds for others; investment and retirement fund management; mutual fund investment services; providing an interactive website and online computer database information in the field of employer-sponsored defined contribution and defined benefit plans; all excluding services in the fields of insurance, real estate, banking, and venture capital" (hereinafter, the "'551 Registration").  The '551 Registration issued on May 26, 2020, and is based on an application filed in the USPTO on March 29, 2017.  A true and correct copy of the registration certificate for the '551 Registration is attached hereto as Exhibit 8.

i.     U.S. Trademark Registration No. 6043302 for the trademark EMPOWER SELECT in International Class 35 for use in connection with, "Financial record keeping for employer-sponsored defined contribution plans, solely for institutions, government agencies, and employers," International Class 36 for use in connection with, "Financial administration of employee pension plans and retirement plans provided solely to institutions, government agencies, and employers; investment

11

of funds for others; investment and retirement fund management; mutual fund investment services; providing an interactive website and online computer database information in the field of employer-sponsored defined contribution; all excluding services in the fields of real estate, banking, and venture capital," and International Class 45 for use in connection with "Regulatory compliance consulting in the field of employer-sponsored defined contribution plans, solely for institutions, government agencies, and employers" (hereinafter, the "'302 Registration"). The '302 Registration issued on April 28, 2020, and is based on an application filed in the USPTO on August 16, 2018. A true and correct copy of the registration certificate for the '302 Registration is attached hereto as Exhibit 9.

        j.      U.S. Trademark Registration No. 6216958 for the trademark EMPOWER HEALTH SAVINGS ACCOUNT in International Class 35 for use in connection with, "Financial record keeping for employer-sponsored defined contribution plans and defined benefit plans solely for institutions, government agencies, and employers; financial record keeping for services provided solely to institutions, government agencies, and employers for regulatory compliance purposes; enrollment processing services for employer-sponsored defined contribution and defined benefit plans provided solely to institutions, government agencies, and employers; financial record keeping services for health savings accounts provided solely to institutions, government agencies, and employers" and International Class 36 for use in connection with, "Financial administration of employee pension plans and retirement plans provided solely to institutions, government agencies, and employers; administration of health savings accounts; investment of funds for others; investment and retirement fund management; mutual fund investment services; providing an interactive website and online computer database information in the field of employer-sponsored defined contribution and defined benefit plans; all excluding services in the fields of insurance, real estate, banking, and venture capital" (hereinafter, the "'958 Registration"). The '958 Registration issued on December 8, 2020, and is based

on an application filed in the USPTO on March 29, 2017. A true and correct copy of the registration certificate for the '958 Registration is attached hereto as Exhibit 10.

19.     The foregoing registrations are prima facie evidence of the validity of such respective trademarks, the registration of such marks, Great-West's ownership of such marks and of its exclusive right to use such marks in connection with all of the goods and services identified in the respective registrations.

20.     Great-West also owns several federal trademark applications for additional specific EMPOWER Marks, including but not limited to federal U.S. trademark applications for word and/or design marks such as EMPOWER FIELD, EMPOWER FIELD AT MILE HIGH, and EMPOWER EASY IRA. These additional specific Empower Marks are also licensed to Empower.

21.     Plaintiffs have expended substantial monies in marketing, advertising, and promoting the EMPOWER Marks and, through such sales and advertising, have generated substantial goodwill and customer recognition in the Empower Marks, such goodwill and recognition inuring solely to Great-West.

22.     Plaintiffs have derived substantial revenues from selling products and services under the EMPOWER Marks. Just by way of example, in 2020 alone, Empower generated income well in excess of $100 million through *billions* of dollars in revenue from products and services sold under the EMPOWER Marks.

23.     As a result of the foregoing activities, and of the public's widespread use of Plaintiffs' products and services, such products and services have come to be, and now are, well- and favorably-known under the EMPOWER Marks as products and services of high quality and reliability.

24.     The well-known and nationally prominent EMPOWER Marks are distinctive of Plaintiffs' products and services, such that valuable goodwill has been built up in the EMPOWER Marks, inuring solely to Great-West pursuant to its license with Empower.

25. The EMPOWER Marks are entitled to immediate and strong protection from cybersquatting, infringement, unfair competition, deceptive trade practices, tortious interference and injury to the marks and the goodwill represented by such marks.

### *Additional Use and Promotion of the EMPOWER Marks*

26. Plaintiffs use the EMPOWER Marks in connection with various financial products. For example, Plaintiffs label their HSA products, "Empower HSA," particular types of retirement plans as "Empower Select," and their application centralizing wellness and financial resources for their customers as "EmpowerUp":

| With the Empower HSA, you can enjoy benefits now — and over time | Empower Select™ is a value-focused retirement plan designed to help growing organizations save time, reduce costs and increase efficiencies |
|---|---|



27. Plaintiffs make these products and services, in addition to their other offerings, available online, where Empower's participants, sponsors and potential customers can engage with these products and services through Empower's web-based platform, mobile application and/or its website. Further, Empower obtains new customers via its website, where new participants can enroll in plans

---

[1] *Available at* https://www.empower-etirement.com/learning_center/resources/static/pdf/saving/manage-health-wealth/HSA_participant_brochure_9-23-19_-_FINAL.pdf; https://www.empower-retirement.com/financial-professionals/empower-select; https://www.empower-retirement.com/plan-sponsors/take-control-of-their-finances (last accessed on July 27, 2021).

online. Empower also encourages and facilitate its customers and sponsors to contact Empower via e-mail and via contact forms embedded on its website.[2]

28. Plaintiffs have also substantially invested in the marketing of the EMPOWER Marks through numerous high-profile sports sponsorships. For example, in and around 2015, Great-West entered into agreements with three NFL teams: the Kansas City Chiefs, the Denver Broncos and the New England Patriots. These sponsorships provide for a host of branding and media rights featuring the Empower Marks and have expanded to include naming rights for several athletic facilities.





---

[2] *See e.g.*, https://www.empower-retirement.com/plan-sponsors/see-big-picture; https://www.empower-retirement.com/plan-sponsors/technology; https://www.empower-retirement.com/contact; https://www.empower-retirement.com/contact/plan-sponsor (last accessed on July 27, 2021).

29.     Also, in 2015, Great-West and the New England Patriots entered into an arrangement under which Plaintiffs sponsored the Empower Field House practice facility.



30.     To further promote the EMPOWER Brand, Great-West purchased the naming rights to the home stadium of the National Football League's ("NFL") Denver Broncos. The stadium is now known as "Empower Field at Mile High", and this name is featured on in-stadium branding and signage, merchandise, and across national television, radio and social media coverage, as illustrated below.[3]



31.     Moreover, Great-West sponsors well-known professional athletes, who prominently display the EMPOWER Marks during national and international events. These athletes include several

---

[3] *See e.g.*, https://www.empower-retirement.com/press/empower-retirement-and-kansas-city-chiefs-thinking-further-ahead-with-new-marketing-partnership (last accessed on July 27, 2021).

Pro Golfers in the Professional Golfers' Association of American (the PGA) and the Ladies Professional Golf Association (LPGA).[4]

32. Plaintiffs' marketing campaigns include high-profile events such as the Tokyo 2020 Olympics Games that commenced in the summer of 2021. As part of their effort, Plaintiffs are running nearly two dozen television spots on NBC and its family of channels, as well as additional advertisements on nationally-televised shows such as the Today Show, Good Morning America, and CBS This Morning.

33. In addition, Plaintiffs have a large presence on social media. For example, Empower has over 42,000 followers on Twitter, identified by their handle, "@EmpowerToday". On Facebook, Empower has over 234,000 followers and on LinkedIn over 41,000 followers.[5]

34. Plaintiffs' promotional efforts extend to their physical locations. For example, signage at Plaintiffs' offices, including its home campus, prominently displays the EMPOWER Brand.

[6]

---

[4] *See e.g.*, https://twitter.com/EmpowerToday/status/1405573472785403907; https://twitter.com/EmpowerToday/status/1408432441275170823/photo/1 (last accessed on July 27, 2021).

[5] *See e.g.*, https://twitter.com/EmpowerToday?ref_src=twsrc%5Egoogle%7Ctwcamp%5Eserp%7Ctwgr%5Eauthor; https://www.facebook.com/empowerretirement/; https://www.linkedin.com/company/empower-retirement/ (last accessed on July 27, 2021).

[6] *Available at* https://twitter.com/EmpowerToday/status/1388264150619525126 (last accessed on July 27, 2021).

35. Plaintiffs' substantial investment in the marketing and advertising of the EMPOWER Marks has helped lead to substantial growth of the EMPOWER Brand. In addition to becoming the second-largest provider of retirement services, as of January 2021, Empower was managing over $1 trillion in assets under administration, managing retirement plans for over 67,000 organizations, and serving over 12 million retirement plan participants.[7]  Many of these retirement plan participants are located in Illinois and this District.

**Defendants' Infringing Acts**

### *The Initial Registration of the Empower Domain*

36. On information and belief, Defendants created a computer software business in the 1990s.  On information and belief, the company was originally called "Elastis Corporation," and then was later renamed to Empower Geo.  On information and belief, the business was intended to solve problems using mapping, GPS and location-based services.

37. On information and belief, on July 26, 1994, a third party registered the Empower Domain.  On information and belief, sometime between July 1994 and March 2002, the Empower Domain was transferred to Defendants, and thereafter has reflected Defendant Empower Geo and/or Defendant Machinis as the registrant of the Empower Domain.  A true and correct copy of excerpts of the WhoIS Records reflecting the Empower Domain registration history is attached hereto as Exhibit 11.

### *Material Changes to the Empower Domain*
### *Through Re-Registrations and Renewals of the Domain*

38. From 2002 to the present day, Defendants have made numerous material changes to the Empower Domain registration, including changing the Registrar, the Registrant, and/or the

---

[7] *See e.g.*, https://www.businesswire.com/news/home/20210309005227/en/Empower-Retirement-Achieves-1-Trillion-AUA-Cites-Client-and-Advisor-Success-as-Keys-to-Growth (last accessed on July 27, 2021).

Administrator of the Empower Domain, adding or removing domain name status codes, periodically utilizing privacy proxy services, and switching the server that hosted the Empower Domain. *See generally*, Exhibit 11.

39.     Thereafter, Defendants periodically made changes to the Empower Domain registration, at times identifying Empower Geo as the owner, and at other times identifying Machinis. Defendants most recently changed the registration to identify a third-party service, Domains by Proxy, LLC, as the Registrant and Administrator. Further, the Empower Domain was most recently re-registered in both July 2017 and July 2019. *See e.g.*, Exhibit 11 at pp. 57, 59, and 110-112.

40.     In February 2020, Defendants again made numerous changes to the registration of the Empower Domain. Defendants changed the Registrant of the Empower Domain, from Empower Geo, to the third-party service, Domains by Proxy, LLC. Further, Defendants changed the Administrator of the Empower Domain to the third-party service, Domains by Proxy, LLC. Thereafter, in June 2020, Defendants changed the IP Address for the Empower Domain, from "35.184.127.25" to "151.101.66.159." *See e.g.,* Exhibit 11 at p. 480.

41.     The Empower Domain is presently set to expire in July 2022.

### *Defendants Abandon Any Even Arguable Good Faith Use of the Empower Domain and Begin Seeking to Capitalize on the EMPOWER Brand*

42.     Plaintiffs launched the EMPOWER Brand nationwide in the fall of 2014, with an initial marketing budget of more than $45 million targeting all major markets. Approximately six months later, after more than a decade of using the Empower Domain in connection with a website that only advertised Defendant Empower Geo's own products and services, Defendants began to try to capitalize on the EMPOWER Brand. Defendants introduced a note in the upper-right-hand corner of the webpage, stating "Domain for sale: Please note that empower.com is for sale. Contact domainsales@empower.com." But as Plaintiffs' national recognition grew, Defendants' attempt to capitalize off the EMPOWER Brand increased as well.

43.     In 2015, Plaintiffs significantly increased their profile when Great-West entered into sponsorship agreements with three of the most popular and successful NFL teams—the Kansas City Chiefs, the Denver Broncos, and the New England Patriots.  At least as early as June 2016, as the EMPOWER Marks continued to grow as household brand names, Defendants removed the prior webpage for Defendant Empower Geo's business and began parking a "domain for sale" page in its place.  From June 2016 onwards, the Empower Domain appeared to be solely used for the purposes of advertising the sale of the Domain.[8]



44.     At the same time, Defendants began listing potential targets for the Empower Domain. The list of potential targets did not originally include Empower, but did list competitors of Plaintiffs. Thereafter, in and around June 2020, Defendants set their sights squarely on Empower and specifically added Empower to the list of targets.[9]

---

[8] *Available at* https://web.archive.org/web/20160525031317/http://empower.com/; https://web.archive.org/web/20160608053446/http://empower.com:80/ (last accessed on July 27, 2021).
[9] *Available at* https://web.archive.org/web/20200813090912/https://empower.com/ (last accessed on July 27, 2021).

**Outbound**

We are also contacting founders and senior leadership of the following organizations:

- Alibaba, Ant Financial (Alipay)
- Tencent
- JD
- Baidu
- Didi
- Apple
- Amazon
- Microsoft
- Google
- Comcast
- Salesforce
- Verizon
- Oracle
- Various financial/investment companies (Fidelity, Schwab, Chase, American Express, Empower Retirement, etc.)

45.     On information and belief, to the extent Defendants previously had any even arguable legitimate use for or rights in the Empower Domain, they unequivocally abandoned those rights no later than June 2016.

### *Defendants' Bad Faith Use, Consumer Confusion, and Threats to Transfer the Empower Domain to Competitors in order to Demand Large Sums of Money from Empower*

46.     Given the identical nature of the Empower Domain and the increasing recognition of the EMPOWER Brand, Plaintiffs sought to eliminate the potential for consumer confusion by purchasing the Empower Domain for a reasonable price.

47.     To that end, at various times, the parties have engaged one another in negotiation for the sale and transfer of the Empower Domain to Plaintiffs.  Notwithstanding Plaintiffs' good faith efforts, Defendants have refused to entertain reasonable offers. Instead, Defendants engineered and launched a scheme with a bad faith intent to profit off both existing consumer confusion as well as the additional confusion that would occur if they were to sell the Empower Domain to a competitor of Plaintiffs.

48. On multiple occasions, Defendants have tried to leverage instances of actual confusion by Plaintiffs' customers, noting that ***they receive "phone calls every day" from Plaintiffs' customers "with 401k questions"*** and ***receive "numerous emails on a regular basis" from Plaintiffs' business partners and customers who are attempting to reach Plaintiffs***, and not Defendants. Defendants have gone so far as to ***threaten to contact competitors "in your industry"*** that may be interested in using the Empower Domain to create "a line of business or product branding that they want to build around" and ***to "create some more confusion."*** Since 2016, the webpage at the Empower Domain clearly states Defendants are contacting "founders and senior leadership" at competitors of Plaintiffs.

49. In an effort to establish the fair value of the Empower Domain, Plaintiffs have researched market comparisons for similar domains sold in arms-length transactions during the last several years. Defendants, unsatisfied with these market-based valuations, continue to demand multi-million-dollar figures far in excess of what would be fair in a good-faith transaction. Instead, Defendants have pressured Plaintiffs to pay such a large amount of money to stop actual and on-going consumer confusion and to extinguish the risk of further confusion. In justifying their inflated price, instead of identifying any value in the Empower Domain that Defendants had themselves generated based on their own goodwill, Defendants openly admitted that their demanded figures are based on their perception of Empower's financial condition, the goodwill Plaintiffs have generated in the EMPOWER Brand, and the growth of Empower's business and assets under management.

50. In the summer and fall of 2020, Defendants became even more brazen in their attempts to profit from the EMPOWER Marks. In June 2020, Defendants edited their website to add "Empower Retirement" to a list of targeted organizations, with which they "will be making contact using every available means." Defendants further stated on their website that they "expect that one of the organizations or individuals targeted will purchase the domain." Defendants not only grouped "Empower Retirement" among a list of so-described "Various financial/investment companies" ***but***

*they also included Plaintiffs' competitors such as "Fidelity, Schwab, Chase, American Express."* In doing so, Defendants continued to make one thing clear to Plaintiffs: if you do not pay an inflated price for the Empower Domain, then we actively will try to sell the Domain to one of your competitors.

51. When Plaintiffs still refused to meet Defendants' inflated price, Defendants engaged a third-party domain brokerage firm that issued a press release and began contacting "previously interested buyers as well as other potential buyers" to participate in a blind auction to be completed by November 23, 2020. Apparently failing to achieve their desired price, Defendants resumed contact with Plaintiffs in January 2021, at which time Defendants began to threaten to sell the Empower Domain to unknown "domain investors" that Defendants acknowledged would have no legitimate business interest. On information and belief, Defendants still own the Empower Domain and continue to seek a third party to purchase it.

52. Throughout Plaintiffs' attempts to engage in good faith negotiations, Defendants have emphasized the actual confusion caused by their ownership of the Empower Domain and the likelihood of additional confusion should they transfer the domain to a competitor. This is precisely the kind of activity that is forbidden by the trademark and deceptive trade practices/unfair competition laws and intended to be remedied by the ACPA. Consumer confusion damages not only Plaintiffs and the value of the EMPOWER Brand, but it creates a risk that the public will be deceived and injured by sources that are not related to Plaintiffs.

53. These injuries will only compound as: Defendants continue to leverage unfairly competitive schemes to create consumer confusion in the marketplace; Defendants attempt to sell the Empower Domain to one of Plaintiffs' competitors; and Plaintiffs continue to grow in size and prominence. Plaintiffs now offer a wider range of products to a growing audience of consumers, and Plaintiffs' competitors likewise continue to expand their own range of services. As these services become more directly consumer-oriented, and due to Defendants' willful conduct, the likelihood of

consumers mistakenly visiting the Empower Domain or contacting Defendants continues to grow. As the history of the parties' discussions demonstrate, Defendants are not using the Empower Domain for any legitimate business-related function (and have not in over five years) and are simply engaged in the textbook definition of cybersquatting. Far from disassociating themselves from Plaintiffs or taking measures to redirect mistaken consumers, Defendants have instead used the increasing instances of actual confusion as leverage in an attempt to engage in profiteering. This activity is unlawful and constitutes violations of the Lanham Act, the Anti-Cybersquatting Consumer Protection Act, and the laws of the State of Illinois.

**COUNT I**
**VIOLATION OF THE FEDERAL ANTI-CYBERSQUATTING**
**CONSUMER PROTECTION ACT (15 U.S.C. § 1125(d))**

54. Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

55. Defendants or their agents registered, renewed, trafficked in, and/or used the Empower Domain to cause confusion with the EMPOWER Marks and not to sell any legitimate goods or services.

56. The Empower Domain is confusingly similar to the EMPOWER Marks. The Empower Domain wholly subsumes the EMPOWER Marks, with no added words.

57. The EMPOWER Marks were registered and distinctive before at least some of Defendants' re-registrations of the Empower Domain.

58. Upon information and belief, at least some of Defendants' re-registrations, and past and present use of the Empower Domain, has been for commercial gain and with a bad-faith intent to profit. Starting in 2016, Defendants ceased using the Empower Domain for any arguable bona fide sales of goods or services, and has solely used the Empower Domain in order to market the sale of the domain name, particularly to Plaintiffs.

59.     Upon information and belief, Defendants' actions were willful, knowing, and in bad faith.  Defendants have admitted that: the Empower Domain is an "exact match brand in the .com,"; the Empower Domain is causing actual confusion with the EMPOWER Marks; and that Empower has "climb[ed] to the top of [its] industry."  Defendants have openly acknowledged that these facts are the basis for their multi-million-dollar demand for the Empower Domain.  Further, Defendants have threatened that if Plaintiffs refuse to make an inflated payment for the Empower Domain, Defendants will attempt to sell the Empower Domain to Plaintiffs' competitor or to a professional cybersquatter who will further attempt to extort Plaintiffs.

60.     Plaintiffs have been damaged by Defendants' re-registration and continued use of the Empower Domain, through, for example, the actual confusion that has arisen amongst Plaintiffs' customers who interact with the Empower Domain under the impression that it is affiliated with Plaintiffs.  Defendants' acts have caused and will continue to cause damage to Plaintiffs, in an amount to be proven at trial.

61.     Unless enjoined by the Court, Defendants' infringing activities will continue unabated and will continue to cause confusion and harm to Plaintiffs for which there is no adequate remedy at law.

## COUNT II
## TRADEMARK INFRINGEMENT (15 U.S.C. § 1125(A))

62.     Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

63.     The Empower Domain encompasses the EMPOWER Marks.

64.     Defendants' use of the Empower Domain is use "in commerce" as defined by the Lanham Act.

65.     Starting in 2014, Plaintiffs began using the EMPOWER Marks, and Great-West obtained registrations for the EMPOWER Marks, which issued at least as early as 2017.  Great-West's

federally-registered EMPOWER Marks are distinctive marks that are associated with Plaintiffs and exclusively identify Plaintiffs' products and services to customers. Starting in 2016, Defendants ceased using the Empower Domain to host any business-related information and stopped using the Empower Domain in connection with even an arguable bona fide offering of goods or services, and it became solely a landing page reflecting a "For Sale" sign.

66.     Great-West's federally-registered EMPOWER Marks were distinctive and identified a single source for Plaintiffs' products and services as of 2016, and before Defendants' re-registrations and renewals of the Empower Domain thereafter.

67.     Starting in 2016, Defendants' use of the Empower Domain started and has continued to cause actual confusion and mistake, and has deceived and continues to deceive Plaintiffs' consumers as to the source or affiliation of the Empower Domain and the website associated therewith.

68.     As a direct and proximate result of Defendants' infringement of the EMPOWER Marks, Plaintiffs have suffered, and will continue to suffer, monetary loss and irreparable injury to their business, reputation, and the goodwill that inures solely to Great-West.

69.     Unless enjoined by this Court, these activities will continue unabated and will continue to cause harm to Plaintiffs for which there is no adequate remedy at law.

70.     Defendants' willful and intentional disregard for Great-West's rights in the registered EMPOWER Marks renders this an exceptional case for which an award of Plaintiffs' reasonable attorneys' fees, costs, and exemplary damages is warranted.

**COUNT III**
**VIOLATION OF THE ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT**
**(815 Ill. Comp. Stat. §§ 510/1 et seq.)**

71.     Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

72. Defendants' use of the Empower Domain, and Great-West's EMPOWER Marks, has caused and will continue to cause confusion, mistake and misunderstanding, creating the false and misleading impression that Defendants, the Empower Domain, and the website associated therewith, are affiliated with, sponsored by, or somehow connected with Plaintiffs.

73. Defendants have and continue to seek to leverage this confusion and misunderstanding, and the goodwill that Plaintiffs have generated in the EMPOWER Marks, to unlawfully derive income and profits from these wrongful acts.

74. Defendants' actions are in the course of their business, vocation, or occupation.

75. Defendants' conduct is causing a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services.

76. Defendants' conduct is causing a likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another.

77. Plaintiffs have and continue to sustain injury to their business reputation and goodwill, where their customers interact with the Empower Domain, and the website associated therewith, under the mistaken impression that it is affiliated with, sponsored by, or somehow connected to Plaintiffs, and in fact such consumers already have suffered numerous instances of actual confusion.

78. For at least the foregoing reasons, Defendants have engaged in deceptive trade practices in violation of the Uniform Deceptive Trade Practices Act.

79. On information and belief, Defendants have willfully engaged in deceptive trade practices such that the Court should assess costs and/or attorneys' fees against Defendants.

80. Unless enjoined by this Court, these activities will continue unabated and will continue to cause harm to Plaintiffs for which there is no adequate remedy at law.

## COUNT IV
## ILLINOIS COMMON LAW TRADEMARK INFRINGEMENT

81.    Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

82.    Great-West has acquired common law rights through their extensive use in commerce of the EMPOWER Marks throughout the United States since at least as early as 2014.

83.    Defendants' unauthorized use of the Empower Domain is causing actual confusion, resulting in consumers contacting Defendants believing that they are affiliated with Plaintiffs.

84.    Defendants' unauthorized use of the Empower Domain constitutes infringement of the EMPOWER Marks under Illinois common law.

85.    Upon information and belief, Defendants' actions are willful, knowing, and intentional.

86.    As a direct and proximate result of Defendants' use and infringement of the EMPOWER Marks, Plaintiffs have suffered, and will continue to suffer, monetary loss and irreparable injury to their business, reputation, and goodwill.

87.    Unless enjoined by the Court, the infringing activities will continue unabated.

## COUNT V
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

88.    Plaintiffs incorporate the allegations in the preceding paragraphs as if fully set forth herein.

89.    Plaintiffs have a reasonable expectation of entering into valid business relationships with prospective customers, and expanding their business relationships with existing customers, for the sale of their retirement services and products via online services, such as through Empower's website and via e-mail.

90.    Defendants are aware of Plaintiffs' expectation, and that it is via these online services that Plaintiffs' existing and potential customers seek to inquire into Plaintiffs' services and conduct

business with Plaintiffs. For example, Defendants admitted that the Domain is a "MUST have" for Plaintiffs, and it is only through Plaintiffs owning the Empower Domain, that will enable Plaintiffs to have "instant credibility with the next generation of future clients." Further, Defendants admitted that they receive "numerous emails on a regular basis at the empower.com domain that are not intended for us."

91.     Defendants are intentionally interfering with Plaintiffs' prospective business opportunities by continuing to use the Empower Domain, despite knowing that it has and is causing confusion with Plaintiffs' prospective business opportunities. For example, Defendants have admitted that they "receive numerous emails on a regular basis at the empower.com domain" which Defendants are intentionally "delet[ing]" and thus preventing Plaintiffs from conducting business with these prospective customers.

92.     As a direct and proximate result of Defendants' continued use of the Empower Domain, and intentional interference with Plaintiffs' ability to enter into business relationships with prospective customers, Plaintiffs have suffered, and will continue to suffer, lost prospective business, and related sales and profits.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that the Court grant the following relief:

1.     That the Court permanently enjoin and restrain Defendants, as well as their successors, assigns, officers, agents, employees, and any party under their control or direction, from:

a.     Infringing upon Great-West's trademarks, service marks, design marks, or trade names, including, but not limited to, the EMPOWER Marks, through the use of the Empower Domain and any other such acts;

        b.      Registering, using, or trafficking in any domain name that is identical or confusingly similar to any of the EMPOWER Marks, including, but not limited to the Empower Domain;

        c.      Selling or offering for sale any domain name that is identical or confusingly similar to any of the EMPOWER Marks, including, but not limited to the Empower Domain; and

        d.      Aiding or assisting any third party in subsections 1(a)-1(c) set forth above;

2.      That the Court order the transfer of the Empower Domain and any other domain name identical or confusingly similar to the EMPOWER Marks to Great-West;

3.      That the Court order Defendants not to sell or otherwise transfer the Empower Domain to any third party, specifically including any company that competes with Plaintiffs;

4.      That the Court order Defendants not to sell or otherwise transfer the Empower Domain to any third party, specifically including any company that could use the Empower Domain in a manner that is likely to cause confusion with the EMPOWER Marks;

5.      That the Court award Plaintiffs its actual damages, lost profits, consequential damages, exemplary damages, statutory damages, and any other damages allowable under law;

6.      That the Court award Plaintiffs their costs and attorneys' fees; and

7.      That the Court award Plaintiffs any other relief to which they are entitled at law or in equity.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demands a trial by jury of all claims so triable.

Respectfully submitted,

Dated: July 28, 2021

/s/ *Gary E. Hood*_____
Gary E. Hood (ARDC No. 6281580)
Mark T. Deming (ARDC No. 6299631)
Adam S. Weiss (ARDC No. 6256842)
POLSINELLI PC
150 N. Riverside Plaza
Suite 3000
Chicago, IL 60606
Telephone: (312) 819-1900
Facsimile: (312) 819-1910
ghood@polsinelli.com
mdeming@polsinelli.com
aweiss@polsinelli.com

Rebecca B. Horton (*pro hac vice application forthcoming*)
California Bar No. 308052
POLSINELLI LLP
Three Embarcadero Center
Suite 2400
San Francisco, CA 94111
Telephone: (415) 248-2100
Facsimile: (415) 248-2101
rhorton@polsinelli.com

*Attorneys for Plaintiffs Great-West Life & Annuity Insurance Company and Empower Retirement, LLC*