# EXHIBIT A

PTO Form 1957 (Rev 9/2005)
OMB No. 0651-0050 (Exp. 07/31/2017)

# Response to Office Action

**The table below presents the data as entered.**

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 86435969 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 102 |
| **MARK SECTION** | |
| **MARK FILE NAME** | http://tmng-al.uspto.gov/resting2/api/img/86435969/large |
| **LITERAL ELEMENT** | EMPOWER |
| **STANDARD CHARACTERS** | NO |
| **USPTO-GENERATED IMAGE** | NO |
| **COLOR(S) CLAIMED** (If applicable) | The color(s) red, white, and blue is/are claimed as a feature of the mark. |
| **DESCRIPTION OF THE MARK** (and Color Location, if applicable) | The mark consists of a flag comprised of wavy lines above the word EMPOWER. |
| **ARGUMENT(S)** | |
| Please see a PDF copy of the argument attached hereto. | |
| **EVIDENCE SECTION** | |
|    **EVIDENCE FILE NAME(S)** | |
|    **ORIGINAL PDF FILE** | evi_381137195-20150820220052806877_._EMPOWER_FORMATIVES.1.pdf |
|    **CONVERTED PDF FILE(S)** (24 pages) | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0002.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0003.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0004.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0005.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0006.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0007.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0008.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0009.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0010.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0011.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0012.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0013.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0014.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0015.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0016.JPG |

| | |
|---|---|
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0017.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0018.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0019.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0020.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0021.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0022.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0023.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0024.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0025.JPG |
| **ORIGINAL PDF FILE** | evi_381137195-20150820220052806877_._EMPOWER_FORMATIVES.2.pdf |
| **CONVERTED PDF FILE(S)**<br>**(20 pages)** | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0026.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0027.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0028.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0029.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0030.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0031.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0032.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0033.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0034.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0035.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0036.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0037.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0038.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0039.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0040.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0041.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0042.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0043.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0044.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0045.JPG |
| **ORIGINAL PDF FILE** | evi_381137195-20150820220052806877_._EMPOWER_FORMATIVES.3.pdf |
| **CONVERTED PDF FILE(S)**<br>**(21 pages)** | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0046.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0047.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0048.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0049.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0050.JPG |

| | |
|---|---|
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0051.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0052.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0053.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0054.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0055.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0056.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0057.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0058.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0059.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0060.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0061.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0062.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0063.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0064.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0065.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0066.JPG |
| **ORIGINAL PDF FILE** | evi_381137195-20150820220052806877_._EMPOWER_FORMATIVES.4.pdf |
| **CONVERTED PDF FILE(S)** (12 pages) | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0067.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0068.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0069.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0070.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0071.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0072.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0073.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0074.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0075.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0076.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0077.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0078.JPG |
| **ORIGINAL PDF FILE** | evi_381137195-20150820220052806877_._EMPOWER_FORMATIVES.5.pdf |
| **CONVERTED PDF FILE(S)** (34 pages) | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0079.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0080.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0081.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0082.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0083.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0084.JPG |

| | |
|---|---|
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0085.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0086.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0087.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0088.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0089.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0090.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0091.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0092.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0093.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0094.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0095.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0096.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0097.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0098.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0099.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0100.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0101.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0102.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0103.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0104.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0105.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0106.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0107.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0108.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0109.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0110.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0111.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0112.JPG](#) |
| **ORIGINAL PDF FILE** | [evi_381137195-20150820220052806877_._EMPOWER_FORMATIVES.6.pdf](#) |
| **CONVERTED PDF FILE(S)**<br>**(29 pages)** | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0113.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0114.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0115.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0116.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0117.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0118.JPG](#) |
| | [\\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0119.JPG](#) |

| | |
|---|---|
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0120.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0121.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0122.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0123.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0124.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0125.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0126.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0127.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0128.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0129.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0130.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0131.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0132.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0133.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0134.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0135.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0136.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0137.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0138.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0139.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0140.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0141.JPG |
| **ORIGINAL PDF FILE** | evi_381137195-20150820220052806877_._EMPOWER_FORMATIVES.7.pdf |
| **CONVERTED PDF FILE(S)** **(29 pages)** | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0142.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0143.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0144.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0145.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0146.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0147.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0148.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0149.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0150.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0151.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0152.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0153.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0154.JPG |

| | |
|---|---|
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0155.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0156.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0157.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0158.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0159.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0160.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0161.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0162.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0163.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0164.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0165.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0166.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0167.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0168.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0169.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0170.JPG |
| **ORIGINAL PDF FILE** | evi_381137195-20150821170422962064_._EMPOWER_RESPONSE.pdf |
| **CONVERTED PDF FILE(S)** **(18 pages)** | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0171.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0172.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0173.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0174.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0175.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0176.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0177.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0178.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0179.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0180.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0181.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0182.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0183.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0184.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0185.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0186.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0187.JPG |
| | \\TICRS\EXPORT16\IMAGEOUT16\864\359\86435969\xml7\ROA0188.JPG |
| | USPTO registrations and/or TDSR records of multiple *POWER* formative marks |

| DESCRIPTION OF EVIDENCE FILE | covering services in International Class 36 as evidence that such marks are inherently weak with a limited scope of enforcement, along with use of referenced marks where available. |
|---|---|

**GOODS AND/OR SERVICES SECTION (035)(current)**

| INTERNATIONAL CLASS | 035 |
|---|---|

| DESCRIPTION |
|---|
| Financial record keeping for employer-sponsored defined contribution plans and defined benefit plans solely for institutions, government agencies, and employers |

| FILING BASIS | Section 1(b) |
|---|---|

**GOODS AND/OR SERVICES SECTION (035)(proposed)**

| INTERNATIONAL CLASS | 035 |
|---|---|

| TRACKED TEXT DESCRIPTION |
|---|
| Financial record keeping for employer-sponsored defined contribution plans and defined benefit plans solely for institutions, government agencies, and employers; financial record keeping for services provided solely to institutions, government agencies, and employers for regulatory compliance purposes |

| FINAL DESCRIPTION |
|---|
| Financial record keeping for employer-sponsored defined contribution plans and defined benefit plans solely for institutions, government agencies, and employers; financial record keeping for services provided solely to institutions, government agencies, and employers for regulatory compliance purposes |

| FILING BASIS | Section 1(b) |
|---|---|

**GOODS AND/OR SERVICES SECTION (036)(current)**

| INTERNATIONAL CLASS | 036 |
|---|---|

| DESCRIPTION |
|---|
| Financial record keeping services provided solely to institutions, government agencies, and employers; financial administration of employee pension plans and retirement plans provided solely to institutions, government agencies, and employers; enrollment processing services for employer-sponsored defined contribution and defined benefit plans provided solely to institutions, government agencies, and employers; investment of funds for others; fund management; mutual fund investment services; providing an interactive website and online computer database information in the field of employer-sponsored defined contribution and defined benefit plans; all excluding services in the fields of insurance, real estate, banking, and venture capital |

| FILING BASIS | Section 1(b) |
|---|---|

**GOODS AND/OR SERVICES SECTION (036)(proposed)**

| INTERNATIONAL CLASS | 036 |
|---|---|

| TRACKED TEXT DESCRIPTION |
|---|
| Financial record keeping services provided solely to institutions, government agencies, and employers; financial administration of employee pension plans and retirement plans provided solely to institutions, government agencies, and employers; enrollment processing services for employer-sponsored defined contribution and defined benefit plans provided solely to institutions, government agencies, and employers; investment of funds for others; ~~fund management~~; investment and retirement fund management; mutual fund investment services; providing an interactive website and online computer database information in the field of employer-sponsored defined contribution and defined benefit plans; all excluding services in the fields of insurance, real estate, banking, and venture capital |

| FINAL DESCRIPTION |
|---|
| Financial record keeping services provided solely to institutions, government agencies, and employers; financial administration of employee pension plans and retirement plans provided solely to institutions, government agencies, and employers; enrollment processing services for employer-sponsored defined contribution and defined benefit plans provided solely to institutions, government agencies, and employers; investment of funds for others; investment and retirement fund management; mutual fund investment services; providing an interactive website and online computer database information in the field of employer-sponsored defined contribution and defined benefit plans; all excluding services in the fields of insurance, real estate, banking, and venture capital |

| FILING BASIS | Section 1(b) |
|---|---|

Ex. A - 7

| ADDITIONAL STATEMENTS SECTION | |
|---|---|
| **DESCRIPTION OF THE MARK**<br>**(and Color Location, if applicable)** | The mark consists of a flag comprised of red and white wavy lines above the vertical display of the blue word EMPOWER, all on a white background. |
| **MISCELLANEOUS STATEMENT** | Applicant has attached its full argument against likelihood of confusion as an exhibit in the evidence section of this response. |
| SIGNATURE SECTION | |
| **RESPONSE SIGNATURE** | /sm mulholland/ |
| **SIGNATORY'S NAME** | Susan M. Mulholland |
| **SIGNATORY'S POSITION** | Attorney for Applicant/MA bar member |
| **SIGNATORY'S PHONE NUMBER** | 617.350.6800 |
| **DATE SIGNED** | 08/21/2015 |
| **AUTHORIZED SIGNATORY** | YES |
| FILING INFORMATION SECTION | |
| **SUBMIT DATE** | Fri Aug 21 17:10:39 EDT 2015 |
| **TEAS STAMP** | USPTO/ROA-XX.XXX.X.XXX-20<br>150821171039877524-864359<br>69-540bf5b96d91850c5837a2<br>9e43e442df16beea7bd5b4d37<br>599ac3f4e2459efa5-N/A-N/A<br>-20150821170422962064 |

PTO Form 1957 (Rev 9/2005)
OMB No. 0651-0050 (Exp. 07/31/2017)

## Response to Office Action

### To the Commissioner for Trademarks:

Application serial no. **86435969** EMPOWER (Stylized and/or with Design, see http://tmng-al.uspto.gov/resting2/api/img/86435969/large) has been amended as follows:

**ARGUMENT(S)**
**In response to the substantive refusal(s), please note the following:**

Please see a PDF copy of the argument attached hereto.

**EVIDENCE**
Evidence in the nature of USPTO registrations and/or TDSR records of multiple *POWER* formative marks covering services in International Class 36 as evidence that such marks are inherently weak with a limited scope of enforcement, along with use of referenced marks where available. has been attached.
**Original PDF file:**
evi_381137195-20150820220052806877_._EMPOWER_FORMATIVES.1.pdf
**Converted PDF file(s)** ( 24 pages)
Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5

Evidence-6
Evidence-7
Evidence-8
Evidence-9
Evidence-10
Evidence-11
Evidence-12
Evidence-13
Evidence-14
Evidence-15
Evidence-16
Evidence-17
Evidence-18
Evidence-19
Evidence-20
Evidence-21
Evidence-22
Evidence-23
Evidence-24

**Original PDF file:**
evi_381137195-20150820220052806877_._EMPOWER_FORMATIVES.2.pdf
**Converted PDF file(s)** ( 20 pages)

Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6
Evidence-7
Evidence-8
Evidence-9
Evidence-10
Evidence-11
Evidence-12
Evidence-13
Evidence-14
Evidence-15
Evidence-16
Evidence-17
Evidence-18
Evidence-19
Evidence-20

**Original PDF file:**
evi_381137195-20150820220052806877_._EMPOWER_FORMATIVES.3.pdf
**Converted PDF file(s)** ( 21 pages)

Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6
Evidence-7
Evidence-8
Evidence-9
Evidence-10
Evidence-11
Evidence-12
Evidence-13

Evidence-14
Evidence-15
Evidence-16
Evidence-17
Evidence-18
Evidence-19
Evidence-20
Evidence-21

**Original PDF file:**
evi_381137195-20150820220052806877_._EMPOWER_FORMATIVES.4.pdf
**Converted PDF file(s)** ( 12 pages)
Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6
Evidence-7
Evidence-8
Evidence-9
Evidence-10
Evidence-11
Evidence-12

**Original PDF file:**
evi_381137195-20150820220052806877_._EMPOWER_FORMATIVES.5.pdf
**Converted PDF file(s)** ( 34 pages)
Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6
Evidence-7
Evidence-8
Evidence-9
Evidence-10
Evidence-11
Evidence-12
Evidence-13
Evidence-14
Evidence-15
Evidence-16
Evidence-17
Evidence-18
Evidence-19
Evidence-20
Evidence-21
Evidence-22
Evidence-23
Evidence-24
Evidence-25
Evidence-26
Evidence-27
Evidence-28
Evidence-29
Evidence-30
Evidence-31
Evidence-32

Evidence-33
Evidence-34
**Original PDF file:**
evi_381137195-20150820220052806877_._EMPOWER_FORMATIVES.6.pdf
**Converted PDF file(s)** ( 29 pages)
Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6
Evidence-7
Evidence-8
Evidence-9
Evidence-10
Evidence-11
Evidence-12
Evidence-13
Evidence-14
Evidence-15
Evidence-16
Evidence-17
Evidence-18
Evidence-19
Evidence-20
Evidence-21
Evidence-22
Evidence-23
Evidence-24
Evidence-25
Evidence-26
Evidence-27
Evidence-28
Evidence-29
**Original PDF file:**
evi_381137195-20150820220052806877_._EMPOWER_FORMATIVES.7.pdf
**Converted PDF file(s)** ( 29 pages)
Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6
Evidence-7
Evidence-8
Evidence-9
Evidence-10
Evidence-11
Evidence-12
Evidence-13
Evidence-14
Evidence-15
Evidence-16
Evidence-17
Evidence-18
Evidence-19
Evidence-20
Evidence-21

Evidence-22
Evidence-23
Evidence-24
Evidence-25
Evidence-26
Evidence-27
Evidence-28
Evidence-29

**Original PDF file:**
evi_381137195-20150821170422962064_._EMPOWER_RESPONSE.pdf
**Converted PDF file(s)** ( 18 pages)
Evidence-1
Evidence-2
Evidence-3
Evidence-4
Evidence-5
Evidence-6
Evidence-7
Evidence-8
Evidence-9
Evidence-10
Evidence-11
Evidence-12
Evidence-13
Evidence-14
Evidence-15
Evidence-16
Evidence-17
Evidence-18

**CLASSIFICATION AND LISTING OF GOODS/SERVICES**
**Applicant proposes to amend the following class of goods/services in the application:**
**Current:** Class 035 for Financial record keeping for employer-sponsored defined contribution plans and defined benefit plans solely for institutions, government agencies, and employers
Original Filing Basis:

**Filing Basis: Section 1(b), Intent to Use:** *For a trademark or service mark application:* As of the application filing date, the applicant had a bona fide intention, and was entitled, to use the mark in commerce on or in connection with the identified goods/services in the application. *For a collective trademark, collective service mark, or collective membership mark application:* As of the application filing date, the applicant had a bona fide intention, and was entitled, to exercise legitimate control over the use of the mark in commerce by members on or in connection with the identified goods/services/collective membership organization. *For a certification mark application:* As of the application filing date, the applicant had a bona fide intention, and was entitled, to exercise legitimate control over the use of the mark in commerce by authorized users in connection with the identified goods/services, and the applicant will not engage in the production or marketing of the goods/services to which the mark is applied, except to advertise or promote recognition of the certification program or of the goods/services that meet the certification standards of the applicant.

**Proposed:**
**Tracked Text Description:** Financial record keeping for employer-sponsored defined contribution plans and defined benefit plans solely for institutions, government agencies, and employers; financial record keeping for services provided solely to institutions, government agencies, and employers for regulatory compliance purposes

Class 035 for Financial record keeping for employer-sponsored defined contribution plans and defined benefit plans solely for institutions, government agencies, and employers; financial record keeping for services provided solely to institutions, government agencies, and employers for regulatory compliance purposes
**Filing Basis: Section 1(b), Intent to Use:** *For a trademark or service mark application:* As of the application filing date, the applicant had a bona fide intention, and was entitled, to use the mark in commerce on or in connection with the identified goods/services in the application. *For a collective trademark, collective service mark, or collective membership mark application:* As of the application filing date, the applicant had a bona fide intention, and was entitled, to exercise legitimate control over the use of the mark in commerce by members on or in connection with the identified goods/services/collective membership organization. *For a certification mark application:* As of the application filing date, the applicant had a bona fide intention, and was entitled, to exercise legitimate control over the use of the mark in commerce by authorized users in connection with the identified goods/services, and the applicant will not engage in the production or marketing of the goods/services to which the

mark is applied, except to advertise or promote recognition of the certification program or of the goods/services that meet the certification standards of the applicant.

**Applicant proposes to amend the following class of goods/services in the application:**
**Current:** Class 036 for Financial record keeping services provided solely to institutions, government agencies, and employers; financial administration of employee pension plans and retirement plans provided solely to institutions, government agencies, and employers; enrollment processing services for employer-sponsored defined contribution and defined benefit plans provided solely to institutions, government agencies, and employers; investment of funds for others; fund management; mutual fund investment services; providing an interactive website and online computer database information in the field of employer-sponsored defined contribution and defined benefit plans; all excluding services in the fields of insurance, real estate, banking, and venture capital
Original Filing Basis:
**Filing Basis: Section 1(b), Intent to Use: *For a trademark or service mark application:*** As of the application filing date, the applicant had a bona fide intention, and was entitled, to use the mark in commerce on or in connection with the identified goods/services in the application. ***For a collective trademark, collective service mark, or collective membership mark application:*** As of the application filing date, the applicant had a bona fide intention, and was entitled, to exercise legitimate control over the use of the mark in commerce by members on or in connection with the identified goods/services/collective membership organization. ***For a certification mark application:*** As of the application filing date, the applicant had a bona fide intention, and was entitled, to exercise legitimate control over the use of the mark in commerce by authorized users in connection with the identified goods/services, and the applicant will not engage in the production or marketing of the goods/services to which the mark is applied, except to advertise or promote recognition of the certification program or of the goods/services that meet the certification standards of the applicant.

**Proposed:**
**Tracked Text Description:** Financial record keeping services provided solely to institutions, government agencies, and employers; financial administration of employee pension plans and retirement plans provided solely to institutions, government agencies, and employers; enrollment processing services for employer-sponsored defined contribution and defined benefit plans provided solely to institutions, government agencies, and employers; investment of funds for others; ~~fund management~~; <u>investment and retirement fund management</u>; mutual fund investment services; providing an interactive website and online computer database information in the field of employer-sponsored defined contribution and defined benefit plans; all excluding services in the fields of insurance, real estate, banking, and venture capital

Class 036 for Financial record keeping services provided solely to institutions, government agencies, and employers; financial administration of employee pension plans and retirement plans provided solely to institutions, government agencies, and employers; enrollment processing services for employer-sponsored defined contribution and defined benefit plans provided solely to institutions, government agencies, and employers; investment of funds for others; investment and retirement fund management; mutual fund investment services; providing an interactive website and online computer database information in the field of employer-sponsored defined contribution and defined benefit plans; all excluding services in the fields of insurance, real estate, banking, and venture capital
**Filing Basis: Section 1(b), Intent to Use: *For a trademark or service mark application:*** As of the application filing date, the applicant had a bona fide intention, and was entitled, to use the mark in commerce on or in connection with the identified goods/services in the application. ***For a collective trademark, collective service mark, or collective membership mark application:*** As of the application filing date, the applicant had a bona fide intention, and was entitled, to exercise legitimate control over the use of the mark in commerce by members on or in connection with the identified goods/services/collective membership organization. ***For a certification mark application:*** As of the application filing date, the applicant had a bona fide intention, and was entitled, to exercise legitimate control over the use of the mark in commerce by authorized users in connection with the identified goods/services, and the applicant will not engage in the production or marketing of the goods/services to which the mark is applied, except to advertise or promote recognition of the certification program or of the goods/services that meet the certification standards of the applicant.

## ADDITIONAL STATEMENTS
**Description of mark**
The mark consists of a flag comprised of red and white wavy lines above the vertical display of the blue word EMPOWER, all on a white background.

**Miscellaneous Statement**
Applicant has attached its full argument against likelihood of confusion as an exhibit in the evidence section of this response.

## SIGNATURE(S)
**Response Signature**
Signature: /sm mulholland/   Date: 08/21/2015
Signatory's Name: Susan M. Mulholland
Signatory's Position: Attorney for Applicant/MA bar member

Signatory's Phone Number: 617.350.6800

The signatory has confirmed that he/she is an attorney who is a member in good standing of the bar of the highest court of a U.S. state, which includes the District of Columbia, Puerto Rico, and other federal territories and possessions; and he/she is currently the owner's/holder's attorney or an associate thereof; and to the best of his/her knowledge, if prior to his/her appointment another U.S. attorney or a Canadian attorney/agent not currently associated with his/her company/firm previously represented the owner/holder in this matter: (1) the owner/holder has filed or is concurrently filing a signed revocation of or substitute power of attorney with the USPTO; (2) the USPTO has granted the request of the prior representative to withdraw; (3) the owner/holder has filed a power of attorney appointing him/her in this matter; or (4) the owner's/holder's appointed U.S. attorney or Canadian attorney/agent has filed a power of attorney appointing him/her as an associate attorney in this matter.

Serial Number: 86435969
Internet Transmission Date: Fri Aug 21 17:10:39 EDT 2015
TEAS Stamp: USPTO/ROA-XX.XXX.X.XXX-20150821171039877
524-86435969-540bf5b96d91850c5837a29e43e
442df16beea7bd5b4d37599ac3f4e2459efa5-N/
A-N/A-20150821170422962064

**RESPONSE**

In the Office Action, dated February 21, 2015, the Examining Attorney has refused registration of applicant's mark, EMPOWER & DESIGN OF A FLAG, on the grounds that that applicant's mark, when used on or in connection with the identified services, so resembles the marks in U.S. Registration Nos. 4665421, 4203457, 4388905, 3614432 and 3490555 as to be likely to cause confusion, to cause mistake, or to deceive. Reconsideration is respectfully requested.

Applicant notes that it has amended the recitation of services in the instant application to read as follows:

> "Financial record keeping for employer-sponsored defined contribution plans and defined benefit plans **solely for institutions, government agencies, and employers**; Financial record keeping for services provided **solely to institutions, government agencies, and employers for regulatory compliance purposes**," in International 35; and

> Financial administration of employee pension plans and retirement plans provided **solely to institutions, government agencies, and employers**; enrollment processing services for employer-sponsored defined contribution and defined benefit plans provided **solely to institutions, government agencies, and employers**; investment of funds for others; investment and retirement fund management; mutual fund investment services; providing an interactive website and online computer database information in the field of employer-sponsored defined contribution and defined benefit plans; **all excluding services in the fields of insurance, real estate, banking, and venture capital**," in International Class 36."

Applicant respectfully notes that the recitation of services in the instant application contains specific field of use restrictions that serve to obviate any concerns regarding likelihood of confusion between applicant's mark and the cited marks.

**REMARKS**

The Examining Attorney has refused registration of applicant's mark, EMPOWER & DESIGN OF A FLAG, under Trademark Act §2(d), 15 U.S.C. §1052(d) because applicant's mark, when used on or in connection with the identified goods, so resembles the marks in US Registration Nos. . 4665421, 4203457, 4388905, 3614432 and 3490555 (the "cited marks") as to be likely to cause confusion, or to cause mistake, or to deceive. Applicant respectfully submits that the facts in the instant case refute the

902393.1

Examining Attorney's objections to registration on the basis of likelihood of confusion between applicant's mark and the cited marks.

Applicant respectfully submits that (1) its mark and the cited marks are not confusingly similar in terms of commercial impression; (2) the cited marks are weak and the scope of protection afforded them is narrow; (3) the sophistication of and degree of care exercised by potential purchasers of applicant's services and the services offered under the cited marks is so high, the facts refute the Examining Attorney's objections to registration on the basis of likelihood of confusion.

## I.   APPLICANT'S MARK AND THE CITED MARK ARE NOT CONFUSINGLY SIMILAR IN TERMS OF COMMERCIAL IMPRESSION.

In assessing likelihood of consumer confusion, the Examining Attorney states that marks are compared in their entireties for similarities in appearance, sound, connotation, and commercial impression. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014) (quoting *Palm Bay Imps., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F. 3d 1369, 1371, 73 USPQ2d 1689, 1691 (Fed. Cir. 2005)); TMEP §1207.01(b)-(b)(v). "Similarity in any one of these elements may be sufficient to find the marks confusingly similar." *In re Davia*, 110 USPQ2d 1810, 1812 (TTAB 2014) (citing *In re White Swan Ltd*., 8 USPQ2d 1534, 1535 (TTAB 1988); *In re 1st USA Realty Prof'ls, Inc.*, 84 USPQ2d 1581, 1586 (TTAB 2007)); TMEP §1207.01(b).

The Examining Attorney notes that applicant's mark includes a design element, but that each of the cited marks is in standard characters, citing *In re Viterra Inc*. for the proposition that a mark presented in stylized characters and/or with a design element generally will not avoid likelihood of confusion with a mark in typed or standard characters because the marks could be presented in the same manner of display. *In re Viterra Inc.*, 671 F.3d 1358, 1363, 101 USPQ2d 1905, 1909 (Fed. Cir. 2012).

The Examining Attorney has concluded that there exists a likelihood of confusion between applicant's mark and the cited marks because the mark EMPOWHR in U.S. Registration No. 4665421 is nearly identical to applicant's mark, with the only distinction being registrant's use of an "H" in the

2

902393.1

middle of the word where applicant uses an "E." The Examining Attorney also has concluded that there exists a likelihood of confusion between applicant's mark and the marks in U.S. Registration Nos. 4203457, 4388905, 361432, and 3490555 because each of these cited marks contains the term EMPOWER. The Examining Attorney has stated that each of the cited registrations could be displayed with a similar flag design to that of applicant, and therefore, the presence of applicant's design does not obviate these refusals.

Applicant respectfully suggests that in contemplating how the cited marks could be displayed, the Examining Attorney has made assumptions resulting in an erroneous conclusion as to likelihood of confusion between the marks. In the instant case, the Examining Attorney appears to have looked beyond the four corners of the instant application and the cited registrations. Applicant believes that the Examining Attorney should focus on the applications and registrations, and not on the real-world or hypothetical real-world conditions. *Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Cir. 2014).

The Examining Attorney acknowledges that although marks are compared in their entireties, one feature of a mark may be more significant or dominant in creating a commercial impression. *See, In re Viterra Inc.*, 671 F.3d 1358, 1362, 101 USPQ2d 1905, 1908 (Fed. Cir. 2012); *In re Nat'l Data Corp.*, 753 F.2d 1056, 1058, 224 USPQ 749, 751 (Fed. Cir. 1985); TMEP §1207.01(b)(viii), (c)(ii). The Examining Attorney has concluded that the dominant feature of the instant mark and the cited marks is the term EMPOWER and that consumers are likely to focus only on this term.

While applicant's mark and the cited marks may share a common element, the Board has held that similarity of the marks in one respect – sight, sound or meaning – will not automatically result in a finding of likelihood of confusion even if the goods are identical or closely related. *In re Lamson Oil Co.*, 6 USPQ2d 1041 (TTAB 1987), citing *Trak Inc. v. Traq Inc.*, 212 USPQ 846, 850 (TTAB 1981).

Applicant respectfully disagrees with the Examining Attorney's assertion that the term EMPOWER in applicant's mark is the dominant portion of its mark. Applicant asserts that the Examining Attorney has incorrectly discounted the significance of applicant's design element in the

3

902393.1

applied-for mark. While in some cases, the literal portion of a word + design mark may result in the word element of a mark having a more significant impact on the consumer, the word portion is not always dominant. *See, In Re Covalinski*, 113 USPQ2d 1166 (TTAB 2014) (no likelihood of confusion between REDNECK RACEGIRL & DESIGN and RACEGIRL on legally identical goods given dominance of design element). The Board in this case found crucial differences between the marks and recognized that "[T]he proper test is not a side-by-side comparison of the marks, but instead 'whether the marks are sufficiently similar in terms of their commercial impression' such that persons who encounter the marks would be likely to assume a connection between the parties." *In Re Covalinski*, 113 USPQ2d 1166 (TTAB 2014), quoting *Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012) (citation omitted). While we must consider the marks in their entireties, it is entirely appropriate to accord greater importance to the more distinctive elements in the marks. *See, In re Nat'l Data Corp.*, 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985). In *In Re Covalinski*, the Board found that the graphic elements of the applied-for mark served to draw the attention to the design elements away from the wording, making the visual impression of the mark more important.

As was in the case in *In Re Covalinski*, applicant's mark contains a strong design element, namely, vivid, red, flag-like wavy lines that immediately call to mind the qualities of strength, stability, character, and security. This powerful graphical element is centered directly above and given at least, if not more, prominence than the word EMPOWER, which appears in blue below. The design element and the literal element cannot be separated or distinguished as separate elements, as might be the case if the design element were to the left or the right of the literal element. The red graphical element in the instant mark actually draws attention away from the blue wording, with the overall impression of the mark as a whole connoting a strong sentiment of Americanism not found with the cited marks.

Applicant' position that the inclusion of a significant design element in the instant application creates crucial differences between its mark and the cited mark, such that there is no likelihood of confusion, also is supported by the holding in *In re White Rock Distilleries, Inc.* 92, USPQ2d 1282, 1284 (TTAB 2009), where the Board found no likelihood of confusion between applicant's standard character

4

902393.1

mark VOLAT for caffeine-induced vodka and registrant's TERZA VOLTA & DESIGN for wines due to the prominence of the design element, reversing the initial refusal to register. *See also, Ferro Corp. v. Ronco Labs., Inc.*, 356 F.2d 122, 124, 148 USPQ 497, 498-99 (CCPA 1966) (confusion was unlikely between applicant's mark and several marks owned by opposer consisting of or containing FERRO, due to the dominance of the design elements of applicant's mark and the relatively small typeface in which FERRO appeared); *accord Parfums de Coeur Ltd. v. Lazarus*, 83 USPQ2d 1012 (TTAB 2007) (prominently displayed design considered to be dominant element of the mark BODYMAN & DESIGN because it catches the eye and engages the viewer before the viewer looks at the word "Bodyman"; *Steve's Ice Cream v. Steve's Famous Hot Dogs*, 3 USPQ2d 1477, 1478-79 (TTAB 1987) (no likelihood of confusion between for restaurant services and STEVE'S for ice cream; "Even with the word 'STEVE'S' appearing above the hot dog figures, applicant's mark is distinguishable from the registered mark of opposer, which is simply the word 'STEVE'S' in block letter form."). Applicant respectfully contends that, as in these cases, the overall commercial impression of applicant's mark is dominated by its design feature, and that this fact weighs heavily against a conclusion that confusion is likely between applicant's mark and the cited marks.

## II.    THE CITED MARKS ARE WEAK AND ARE THEREFORE ENTITLED TO ONLY A NARROW SCOPE OF PROTECTION.

Trademarks are classified across a continuum of strength and distinctiveness, from generic to merely descriptive to suggestive to arbitrary or fanciful. Marks that are strong "are given 'strong' protection—protection over a wide range of related products and services and variations on visual and aural format. . . . The stronger the mark, the more likely it is that encroachment on it will produce confusion. Conversely, relatively weak marks are given a relatively narrow range of protection both as to products and format variations." 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, 11:73 (4th ed. 2001), citing *Champions Golf Club v. Champions Golf Club*, 38 USPQ2d 1161(6th Cir. 1996).

5

902393.1

A. **The cited registered marks are weak due to extensive registrations and use of similar marks.**

The ultimate test of relative strength is the distinctiveness of a mark as perceived by the relevant customer group. A "mark that is hemmed in on all sides by similar marks on similar goods cannot be very 'distinctive.' It is merely one of a crowd of marks. In such a crowd, customers will not likely be confused between any two of the crowd and may have learned to carefully pick out one from the other." *McCarthy, supra*, at § 11:85. Applicant notes that the record demonstrates that the USPTO has registered a number of EMPOWER-formative and phonetically equivalent marks in the fields of financial and investment services to many different entities. As such, the cited marks are weak marks in a crowded field. See, the Exhibits entitled "EMPOWER FORMATIVES" attached hereto showing USPTO records and evidence of actual use, where available, of the following marks:

| Mark | Owner | App./Reg. No. | Class | Goods/services |
|------|-------|---------------|-------|----------------|
| EMPOWER RESULTS | AON Corporation | 4,203,457 | 35, 36 | Business consultation; Business research and surveys; Business risk management; Compilation and provision of trade and business price and statistical information; Consulting services in the field of human resources development, namely, for the promotion of employee retention, career growth, and increased productivity for employees and employers; Cost containment in the field of insurance; Cost management for the health benefit plans of others; Data compiling and analyzing in the field of insurance; Human resource analysis and consulting services; Work analysis to determine worker skill sets and other worker requirements; Actuarial services; Administration of employee benefit plans concerning insurance and finance; Consulting services in the field of retirement plan administration |

6

902393.1

| | | | | and fiduciary compliance; Financial risk management; Insurance administration; Insurance brokerage; Insurance claims processing; Insurance information and consultancy; Insurance services in the nature of loss control management for others; Insurance underwriting consultation; Providing information in the field of employee financial benefit plans |
|---|---|---|---|---|
| EMPOWERED BENEFITS | Empoweredbenefits LLC | 35, 36 | 3,614,432 | Providing online comparison shopping information regarding employee benefit plans. Administration of employee benefits plans via the Internet; providing information about employee benefit plans via the Internet; providing online information regarding employee benefit plans for use in comparing employee benefit plans |
| EMPOWERED BENEFITS | Empower Financial Resources, Inc. | 35, 36, 42 | 4,388,905 | Providing online comparison shopping information regarding employee benefit plans. Administration of employee benefit plans concerning insurance and finance via the Internet; providing information about employee benefit plans concerning insurance and finance via the Internet. Application service provider, namely, hosting and managing and maintaining websites of others in the fields of employee benefits to allow for employee and administrator access for the management of employee benefit plans and options |
| EMPOWHR | EmpowHR, Inc. | 36 | 4,665,421 | Administration of employee benefit plans concerning insurance and finance |
| EMPOWER FEDERAL CREDIT UNION | Empower Federal Credit Union | 36 | 4,418,865 | Financial services for credit union members, namely, savings, checking, retirement and |

7

| | | | | education savings accounts, loan financing for personal, real property and student loans, automated teller machine services, credit card services, debit card services, online banking services |
|---|---|---|---|---|
| EMPOWER FEDERAL CREDIT UNION | Empower Federal Credit Union | 36 | 4,428,988 | Financial services for credit union members, namely, savings, checking, retirement and education savings accounts, loan financing for personal, real property and student loans, automated teller machine services, credit card services, debit card services, online banking services |
| EMPOWER BROKERAGE | Empower Brokerage Inc. | 36 | 4,348,432 | Brokerage in the field of insurance; Financial evaluation for insurance purposes; Insurance agencies; Insurance agencies in the field of car, home, health, business and life insurance; Insurance agency and brokerage; Insurance brokerage; Insurance brokerage in the field of car, home, health, business and life insurance; Insurance information and consultancy; Life insurance brokerage; Providing vehicle insurance rate quotes |
| EMPOWR | The Ticket Reserve, Inc. | 36 | 86/272738; allowed | Commodity trading services for others in connection with event tickets and reservations and consumer products and services; forward contracts on event tickets and reservations |
| EMPOWER YOUR MONEY | Tax & Financial Empowerment Inc. | 36 | 3,588,166 | Financial planning |
| MPOWER | Mpower.com, Inc. | 9, 16, 36 | 4,166,086 | Financial services, namely, providing advice and information on 401K plans and investment products offered and managed by |

8

| | | | | others; providing a subscriber based online service to assist and advise users on a case-by-case basis in the field of financial planning, namely, investment planning, investment profiling and investment strategy formulation based on and comprising investment products offered and managed by others |
|---|---|---|---|---|
| MPOWER | Redstone Federal Credit Union | 36 | 4,118,694 | Banking services, namely saving account services, checking account services, check card services, online banking services via a global computer network, phone banking services; banking services designed for teenagers |
| MPOWER VENTURES | MPOWER Ventures, LP | 36 | 3,728,910 | Venture capital services, namely, providing financing and venture capital investment funds to companies and funding businesses in emerging markets in under-developed products and services sectors |
| MPOWER VENTURES & DESIGN | MPOWER Ventures, LP | 36 | 3,719,057 | Venture capital services, namely, providing financing and venture capital investment funds to companies and funding businesses in emerging markets in under-developed products and services sectors |
| SERVE. EMPOWER. ENRICH. | FAA Credit Union | 36 | 4,443,134 | Financial services, namely, banking, checking and savings accounts services, financing consumer and auto loans, real estate loans in the nature of mortgage lending, investment of funds for others and credit card services |

9

902393.1

| EMPOWER LETTING YOU TAKE CHARGE (STYLIZED) | CoPower (Administrators), Inc. | 36 | 4,696,473 | Group employee benefit services, namely, processing, administering and managing employee benefit plans concerning insurance |
|---|---|---|---|---|
| EMPOWER BY LHR | LHR Inc. | 36 | 4,376,041 | Debt recovery services |
| EMPOWER YOUR PRACTICE | Envestnet Asset Management, Inc. | 36 | 4,283,138 | Investment management and investment consulting services |
| WE EMPOWER YOU | McGuire Performance Solutions, Inc. | 36 | 4,118,523 | Financial analysis and consultation; financial forecasting; fiscal assessment and evaluation; financial research |
| EMPOWER TRUST. | Trax Technologies, Inc. | 35, 36, 42 | 3,997,177 | Account auditing; Accounts receivable services. Accounts receivables financing; Bill payment services. File sharing services, namely, providing a website featuring technology enabling users to upload and download electronic files; Software as a service (SAAS) services featuring software for freight audit, payment, cost allocation, accounts receivable and payable management, and transportation spend management; Software as a service (SAAS) services, namely, hosting software for use by others for freight audit, payment, cost allocation, accounts receivable and payable management, and transportation spend management |
| EMPOWER INSURANCE | Empower Insurance Group MGA, Inc. | 4,137,313 | 36 | Insurance agencies in the field of car insurance; Insurance brokerage in the field of car insurance; Providing vehicle insurance rate quotes |
| IMPULSA TU MUNDO | Mercantil Servicios Financieros, C.A. | 3,874,299 | 36 | Banking; capital investment services; charitable fund raising; check verification; credit card services; issuance of credit cards; debit card services; safe deposit |

10

| | | | | box services for the deposit of valuables; financial evaluation for banking and real estate, financial information; financial sponsorship of athletic events; financing services, namely, money lending, investment fund transfer and transaction services, mortgage planning; funds investment; electronic funds transfer; installment loans; issue of tokens of value; issuing of travellers' checks; lease-purchase financing; loan financing; mortgage banking; mutual fund brokerage; safe deposit box services; savings banks; securities brokerage and real estate valuations |
|---|---|---|---|---|
| FP&S EMPOWER | Clearview Correspondent Services, LLC | 3,819,506 | 36 | Financial services, namely, providing information and advice to align personal financial strategies and planning with life goals, financial planning, financial forecasting, personal financial situation assessment and evaluation, and implementing and monitoring financial planning strategies to achieve life goals |
| LEARN. EMPOWER. SUCCEED | Life Insurance Settlements, Inc. | 3,122,124 | 36 | Viatical settlement services, namely, life insurance policy settlements and life insurance settlements |
| POWER FINANCIAL | Power Corporation of Canada | 3,931,290 | 36 | Equity capital investment; financial investment in the fields of insurance, mutual funds and financing loans; investment advice, consulting and management to businesses in the financial, insurance, investment, newspaper and printing fields |
| EMPOWER ASSET MANAGEMENT & DESIGN | Empower Asset Management LLC | 36 | 4,674,640 | Brokerage in the field of insurance; Financial evaluation for insurance purposes; Insurance agencies; Insurance agencies in the field of car, home, health, business and life insurance; |

11

| | | | | Insurance agency and brokerage; Insurance brokerage; Insurance brokerage in the field of car, home, health, business and life insurance; Insurance information and consultancy; Life insurance brokerage; Providing vehicle insurance rate quotes |
|---|---|---|---|---|

**B.    The evidentiary record supports applicant's assertion that there is no likelihood of confusion due to the inherent weakness of the cited registered marks.**

It is well established that extensive third-party use of a disputed term indicates that the term itself deserves only weak protection. *First Sav. Bank, F.S.B. v. First Bank System, Inc.*, 40 USPQ2d 1865 (10th Cir. 1996). Applicant asserts that the evidentiary record of numerous registrations and approvals for registration for marks containing the term EMPOWER and its phonetic equivalents in the fields of financial and investment and related services proves that the cited marks are inherently weak, which demands a relatively narrow range of protection both as to goods and services and format variations. "[W]here a party chooses a trademark that is an inherently weak mark, his competitors may come closer to his mark than would be the case with a strong mark without violating his rights." *McCarthy, supra,* §11:73 at 11-135, quoting *Sure-Fit Products Co. v. Saltzson Drapery Co.,* 117 USPQ 295 (CCPA 1958). *See also, Champions Golf Club*, 38 USP2d, quoted with approval in *First Sav. Bank, F.S.B. v. First Bank System, Inc.*, 40 USPQ2d at 1873 ("When the primary term is weakly protected to begin with, minor alterations may effectively negate any confusing similarity between the two marks."). When the marks are viewed as a whole, applicant contends that the differences between applicant's mark and the cited marks negate any confusing similarity between them.

It stands to reason that "[e]vidence of widespread third-party use . . . of marks containing a certain shared term is competent to suggest that purchasers have been conditioned to look to other elements of the marks as a means of distinguishing the source of goods or services . . . ." *In re Broadway*

12

902393.1

*Chicken, Inc.*, 38 USPQ2d 1559 (TTAB 1996) (evidence of widespread third-party use of trade names/marks containing the term BROADWAY for restaurant/eating place services sufficient to show consumers can differentiate between sources based on minor differences in marks). The existence of all these registrations containing the term EMPOWER and its phonetic equivalents in the same and related fields of use clearly demonstrates that the term EMPOWER and its phonetic equivalents are so weak that they can be used in connection with the same or related services offered by numerous different sources without confusion. As a result, the scope of protection for marks containing the term EMPOWER is limited in nature.

In the instant case, the relevant consumers will look to applicant's strong graphical element and overall commercial impression of its mark to differentiate applicant's services from those provided by the registrants of the cited marks. The record is clear that he USPTO, by allowing or granting registrations to all of these EMPOWER-formative and phonetic equivalent marks, has determined that these marks are inherently weak and that consumers can differentiate between the marks and the sources of origin of the registrants' respective product/service offerings.

## III.    BOTH APPLICANT AND REGISTRANTS SELL THEIR SERVICES TO SOPHISTICATED PURCHASERS WHO HAVE A FOCUSED NEED FOR SERVICES.

Applicant's financial record keeping for employer-sponsored defined contribution and defined benefit plans and administration of such plans for institutions, government agencies, and employers are premium investment vehicles for retirement savings. In marketing these services, applicant works with highly trained and sophisticated financial professionals at companies, institutions, and government agencies who are accustomed to making purchasing decisions regarding complex and sophisticated investment products and in making decisions as to the quality and dependability of such services. Moreover, purchasers of applicant's services have a fiduciary duty to their employees, the intended beneficiaries of applicant's services, which is a legal relationship of trust regarding the management of money. A fiduciary duty requires the highest standard of care, not an ordinary standard of care.

13

902393.1

Purchasers of applicant's services must act at all times for the sole benefit and interests of its trustees, and fiduciaries may be found liable for breaches of such fiduciary trust. Applicant's relevant purchasers are thus not *ordinary* purchasers. Even the *least-sophisticated* potential purchasers of applicant's services are highly sophisticated, which obviates certain concerns raised by the Board in *Stone Lion Capital Partners, LP, supra*. As a result of this fiduciary duty and in view of the sophistication of applicant's relevant customers, it is highly unlikely that any potential purchaser will confuse applicant's services with those offered by the registrants of the cited marks.

Moreover, "there is always less likelihood of confusion where goods are expensive and purchased after careful consideration." *Astra Pharmaceutical Products, Inc. v. Beckman Instruments, Inc.*, 220 USPQ 786, 790 (1st Cir. 1983). The court in *Astra* stated:

> "The decision to buy a machine worth thousands of dollars is obviously not done on an impulse, and involves a careful consideration of the reliability and dependability of the manufacturer and the seller of the product." *Id.* at 791.

In *Astra*, the court held that there was no likelihood of confusion between *identical* marks used in the same medical or healthcare industry where the purchasers of the products were sophisticated purchasers. Applicant's position against likelihood of confusion is supported by the facts in *Astra* – in this case, while the marks themselves may contain a similar element, they are not identical, and, as in *Astra*, there is no likelihood of consumer confusion given that the both applicant's services and registrant's services can cost each purchaser cost millions of dollars annually in service, management, and other fees.

Even where goods or services are related, might be encountered by the same customers, and might be assumed to be produced by the same source, the Board has found that "highly sophisticated, technical and relatively expensive goods are likely to be purchased only with care and deliberation after investigation to determine the suitability for the specific needs." *In re Software Design, Inc.*, 220 USPQ 662, 663 (TTAB 1983) (no likelihood of confusion between the mark DOX for computer programming services and DOC'S for custom manufacture of computer systems). As discussed above, neither applicant's services nor registrant's services are impulse purchases. Given the cost to the institution or

14

902393.1

company of implementing a record keeping system to comply with the regulations of the Securities and Exchange Commission or of a defined pension or retirement savings plan, and given the overall complexity of selecting appropriate investment services and vehicles for investment, applicant's services are retained by a company only after careful analysis as to both the quality of applicant's services and applicant's reputation. The decision to purchase applicant's services requires extensive consideration as to whether applicant's services are appropriate for the organization and its employees. Applicant markets its services to highly sophisticated purchasers who would not reasonably confuse the highly sophisticated financial record-keeping or employer-sponsored benefit and retirement plans provided by applicant with the financial service offerings of other companies. The purchasers of each party's respective offerings may be expected to exercise greater care in their purchases than ordinary consumers and are less likely to be confused. *Pignons S.A. de Mecanique*, 212 USPQ at 252. Consequently, there is little chance of confusion in the relevant markets as to the source of origin of the pertinent services.

Further, it is well established that circumstances can increase the degree of care and reduce the likelihood of confusion, including where the purchaser has a reasonably focused need, specific purpose or plan involving the product or service or where the purchaser has an added duty of care. *Haydon Switch & Instrument v. Rexnord, Inc.*, 4 USPQ2d 1510, 1517 (D.Conn. 1987) (no likelihood of confusion between PLANETGEAR for mechanical drum-wheel digital-display time counters and PLANETGEAR for planetary gear speed reducers in motor drive shafts, as goods are sold for unrelated purposes to sophisticated purchasers); *G.H. Mumm & Cie v. Desnoes & Geddes, Ltd.*, 16 USPQ2d 1635 (Fed. Cir. 1990) (purchaser has focused need for champagne, an upscale item and, therefore, would not confuse mark with that of mark for beer); *Cliff Notes, Inc. v. Bantam Doubleday Dell Publishing Group, Inc.*, 12 USPQ2d 1289, 1293 (2nd Cir. 1989) (no likelihood of confusion for the purchase of a study guide due to the fact that the purchaser would have a specific book in mind when purchasing the guide and would not purchase it impulsively).

Applicant asserts that the potential purchasers of its services are highly sophisticated corporate and institutional officers who have a focused need for financial record keeping and third-party

15

902393.1

administered defined benefit and related financial services. As a result, these high-level executives making purchasing decisions must seek out specific services and service providers that meet these needs. Purchasers of such services understand how to evaluate the appropriateness of each service provider, and they also understand that the selection of the wrong provider of such services could result in a loss in investment values for their employees and in a breach of their fiduciary duty, which may expose their organizations to liability. In view of the sophistication of applicant's customers, it is highly unlikely that any customer will confuse applicant's and registrant's services. Applicant's services are purchased after careful analysis as to the nature and quality of its services, as well as an analysis of the reputation and credibility of their source. Moreover, given the complexity of applicant's services, consumers of applicant's services typically would need to research a number of companies providing such mutual fund and investment services to ensure suitability of the services and the personnel offering those services to the operations of the company.

Applicant acknowledges that the fact that purchasers may be sophisticated or knowledgeable in a particular field does not sophisticated or knowledgeable in a particular field does not necessarily mean that they are sophisticated or knowledgeable in the field of trademarks or immune from source confusion. TMEP §1207.01(d)(vii)*; see, e.g., Stone Lion Capital Partners, LP v. Lion Capital LLP*, 746 F.3d 1317, 1321, 110 USPQ2d 1157, 1160 (Fed. Circ. 2014). However, in the instant case, the specific facts negate this finding. The relevant sophisticated purchasers of applicant's services are making decisions regarding the selection of the best providers for financial record keeping for and employer-sponsored defined contribution and defined benefit plans and related services on behalf of all of their organizations' employees, a process which frequently takes months and months or more of research into different vendors, listening to various sales pitches, conducting investigations into whether the providers have been subject to any penalties from the Securities and Exchange Commission, determining whether there are any hidden charges that would detrimentally impact employees, and sometimes even vetting the individual investment and fund managers. The corporate and institutional decision makers must select the best plan providers in order to protect their employees' pecuniary interests. The level of decision making

16

902393.1

in the instant case is not equivalent to an average consumer going online and opening a checking account based on whose logo looks better.

In addition to the finding of no likelihood of confusion between weak marks used in connection with banking services cited above in *First Sav. Bank, F.S.B. v. First Bank System, Inc.*, *supra*, applicant's position that there is no likelihood of confusion between its mark and the cited marks in the financial and investment service industries is supported by the facts in *In re Cullen/Frost Bankers, Inc.*, which, while not citable as precedential, is analogous to the instant application. *In re Cullen/Frost Bankers, Inc.*, S.N. 75/199,524 October 10, 2000. In *In re Cullen*, the Examining Attorney refused registration of applicant's mark READYBANK for certain banking services based on confusing similarity with registrant's mark READY BANKER for related automated banking services. In overturning the refusal to register, the Board found that the relevant customers exercised a very high level of care when selecting the source of such services. The same is true in the instant case, where the relevant customers of applicant's services are senior level employees of institutions, government agencies and companies, frequently with a fiduciary duty to select the appropriate provider of employer-sponsored defined contribution and defined benefit plans and related services for their organizations' employees.

Neither applicant's services nor the services offered under the cited registered marks are impulse purchases. Each is purchased after careful analysis as to both the quality of the service offerings and the reputation and quality of their sources, which are key concerns in the financial and investment service industries, particularly where it is the corporate, institutional, and governmental agencies making the decision on behalf of potentially thousands and hundreds of thousands of employees. The decision to purchase applicant's services and those offered under the cited marks requires extensive consideration and thought. Consequently, there is little chance of confusion in the relevant markets as to the source of origin of the pertinent services.

### CONCLUSION

17

902393.1

Applicant respectfully submits that confusion between the services sold under applicant's mark and those offered under the cited marks is extremely improbable because (1) its mark and the cited marks are not confusingly similar in terms of commercial impression; (2) the cited marks are weak and with a narrow scope of protection; (3) the sophistication of and degree of care exercised by potential purchasers of applicant's services and the services offered under the cited marks is so high.

Applicant respectfully notes that likelihood of confusion is synonymous with 'probable' confusion – it is not sufficient if confusion is merely possible. *McCarthy, supra*, at §23:3, citing *American Steel Foundries v. Robertson*, 269 U.S. 372, 46 S.Ct. 160, 70 L. Ed. 317 (1926). Thus, trademark laws seek to prevent the likelihood of confusion, not remote possibilities of confusion based on speculation and supposition. *In re Chalet Chocolates, Inc.*, 212 USPQ 968, 969 (TTAB 1992). Any conclusion that there exists a likelihood of confusion between applicant's mark and the cited marks would be speculative at best and wholly inconsistent with the intent of these laws.

Favorable consideration is respectfully requested.

902393.1